[No. 19476.　In Bank.—March 28, 1896.]

# ANDREW SIMPSON, Respondent, v. PETER FERGUSON, Appellant.

Growing Crops—Priority of Mortgages—Mode of Execution—Chattel Mortgage—Mortgage upon Rents and Profits.—A mortgage upon a growing crop must be executed with the formalities prescribed in section 2956 of the Civil Code, otherwise it is void as against a subsequent mortgage of the crop in good faith; and a prior mortgage of the land, together with the "rents, issues, and profits thereof," whatever its effect may be as between the parties thereto, as a lien upon all the crops that might thereafter grow upon the land, cannot, if executed only as a real estate mortgage, prevail over a subsequent properly executed chattel mortgage of the growing crop of a subsequent year.

Id.—Construction of Code—Exclusive Method of Mortgage—Growing Crops a Chattel.—The legislature intended by the provisions of section 2955 of the Civil Code, and the following sections, to provide an exclusive mode for the mortgaging of growing crops, and intended to declare that for such purposes growing crops shall be regarded as a chattel.

Id.—Effect of Mortgage upon Land—Right of Mortgagor to Intermediate Crops.—A mortgage upon the land with its rents and profits is limited in its effect, so far as growing crops are concerned, to crops growing upon the land at the time of foreclosure, and does not vest in the mortgagee a right to the crop grown intermediate the giving of the mortgage and its foreclosure, but the mortgagor is entitled to such crops, and may exercise as absolute dominion over them as if the mortgage did not exist.

Appeal from a judgment of the Superior Court of Riverside County.　J. S. Noyes, Judge.

The facts are stated in the opinion of the court in Department One.

*G. A. Skinner,* and *Rolfe & Rolfe,* for Appellant.

Not only the land described in plaintiff's mortgage, but the rents, issues, and profits thereof, were mortgaged, so that the crop of oranges which a receiver would take possession of, if one had been appointed, was part of the mortgaged property (*Montgomery* v. *Merrill,* 65 Cal. 432; Code Civ. Proc., sec. 564), and the proceeds thereof on a foreclosure sale would be applied in satisfaction of plaintiff's lien, as superior to that of Ferguson's chattel mortgage. (*Treat* v. *Dorman,* 100 Cal. 623.) As no receiver was appointed, the judgment debtor was entitled to remain in possession of the premises until six months expired in which she had a right to redeem; was entitled to the growing crops, and could mortgage them. (*West* v. *Conant,* 100 Cal. 233; Code Civ. Proc., sec. 706; Civ. Code, sec. 2955, subd. 10, amended March 9, 1893; *Pierce* v. *Robinson,* 13 Cal. 116; *Hidden* v. *Jordan,* 28 Cal. 302; *Pacific Mut. Life Ins. Co.* v. *Beck* (Cal.), 35 Pac. Rep. 169; *Sexton* v. *Breese,* 135 N. Y. 387; *Teal* v. *Walker,* 111 U. S. 242; *Murdock* v. *Clarke,* 59 Cal. 683; 2 Jones on Mortgages, secs. 670, 1120, 1658.) But the crop of oranges was not mortgaged to plaintiff, and so much of his mortgage as relates to rents, issues, and profits is void, as against defendant Ferguson, for any purpose of covering such oranges. As to such oranges it is a mortgage on personal property, to wit: on a growing crop. (Civ. Code, secs. 2955, 2957.) A mortgagee is not entitled to rents and profits even after condition broken and filing of a bill of foreclosure, if he has not taken possession or had a receiver appointed. (*Teal* v. *Walker, supra; Gilman* v. *Illinois etc. Tel. Co.,* 91 U. S. 616; *Husheon* v. *Husheon,* 71 Cal. 408; *Guy* v. *Ide,* 6 Cal. 99; 65 Am. Dec. 490; *Polhemus* v. *Trainer,* 30 Cal. 686; *Verner* v. *Betz,* 46 N. J. Eq. 256; 19 Am. St. Rep. 387; *Killebrew* v. *Hines,* 104 N. C. 182; 17 Am. St. Rep. 672.) Growing

crops may be mortgaged as personal property. (Civ. Code, sec. 2955; *Purner* v. *Piercy*, 40 Md. 212; 17 Am. Rep. 591; *Myers* v. *White*, 1 Rawle, 353.)

*E. B. Mering, amicus curiæ.*

Mortgage of real property does not pass any interest or convey any title to the mortgagee, but the title and power of disposition remain in the mortgagor (*Williams* v. *Santa Clara Min. Assn.*, 66 Cal. 201; *Mack* v. *Wetzler*, 39 Cal. 247; Code Civ. Proc., sec. 744; *Henley* v. *Hotaling*, 41 Cal. 22); while a chattel mortgage conveys title subject to be defeated by the performance of the condition. (*Berson* v. *Nunan*, 63 Cal. 550; *Chittenden* v. *Pratt*, 89 Cal. 178.)

*R. Clark, amicus curiæ.*

A chattel mortgage on fixtures so placed on the realty as to become a part of it will prevail over a prior mortgage on the realty. This principle applies to the case at bar. (*Tibbetts* v. *Moore*, 23 Cal. 209.) Our Civil Code makes the proper execution and recording of a crop mortgage equivalent to a severance and delivery of the crop to the holder of the crop mortgage. (*Dascey* v. *Harris*, 65 Cal. 357; *Corcoran* v. *Doll*, 35 Cal. 476; *Huerstal* v. *Muir*, 64 Cal. 450; *Moisant* v. *McPhee*, 92 Cal. 76.)

*E. B. Stanton,* for Respondent.

Plaintiff's mortgage was expressly made a lien upon the rents, issues, and profits of the premises described therein. This includes everything that would pass by a grant of the property. (Civ. Code, secs. 1083, 1084, 2926, 2947; Jones on Mortgages, 138.) The effect of the deed upon the foreclosure of a mortgage is to vest in the purchaser the entire interest and estate of the mortgagor and mortgagee as it existed at the date of the mortgage, and unaffected by subsequent encumbrances and conveyance of the mortgagor. (*Rector* v. *Mack*, 93 N. Y. 488; 45 Am. Rep. 260; *Batterman* v. *Albright*, 122

N. Y. 484; 19 Am. St. Rep. 510.)  And if there is no reservation of growing crops, they will become the property of the grantee.  (*Ledyard* v. *Phillips,* 47 Mich. 305; *Chapman* v. *Veach,* 32 Kan. 167; *Babcock* v. *Dieter,* 30 Kan. 172; Tiedeman on Real Property, sec. 799, subd. 2; Jones on Chattel Mortgages, sec. 145.)  Natural products are parcel of the land itself, and not chattels. Annual products are considered as incident to the land, and therefore not personal.  (Freeman on Executions, sec. 113, and cases cited.)  The purchaser at a foreclosure sale becomes the owner of the crops then growing upon the premises.  (*Scriven* v. *Moote,* 36 Mich. 64; *Anderson* v. *Strauss,* 98 Ill. 485; *Downard* v. *Groff,* 40 Iowa, 597; Jones on Mortgages, secs. 676, 697, 780, 1658.)

*W. S. Goodfellow, amicus curiæ.*

If the mortgagee have a lien upon the crops he is entitled, as of right, to have them subjected, upon foreclosure proceedings, to the payment of the mortgage debt.  And if the property is in danger of being lost, removed, or materially injured, he may have a receiver appointed.  (Jones on Mortgages, sec. 1516; Code Civ. Proc. sec. 564; *Treat* v. *Dorman,* 100 Cal. 625.)  Where, by the terms of a mortgage, the rents, issues, and profits are not expressly mortgaged, the right of the mortgagee to intercept the rents is an equity merely, as distinguished from an abstract right granted to the mortgagee by contract, and in the former case, specially, equities must be shown.  (*Shotwell* v. *Smith,* 3 Edw. Ch. 588; *Quincy* v. *Cheeseman,* 4 Sand. Ch. 405; Wiltsie on Foreclosure, sec. 657.)  The method for mortgaging growing crops, provided by section 2955, is not exclusive.  If the same class of property may be under some conditions realty, and under other conditions personalty, it may be the subject of a real estate mortgage or of a chattel mortgage.

VAN FLEET, J.—Upon consideration of this cause in Bank, after a more full and thorough presentation

thereof than was had in Department, we are satisfied that the conclusion reached by the department was correct and should be adhered to.

It is urged that sections 2955 and following of the Civil Code, providing for the manner of mortgaging growing crops, do not establish an exclusive method; that, as this class of property may, under some conditions, be regarded as realty, and under other conditions as personalty, it must follow that under corresponding conditions the property may be the subject of a real estate mortgage or a chattel mortgage, according to the circumstances; and that plaintiff having a valid mortgage upon the land, with its rents, issues, and profits, this gives him a valid lien upon the growing crops, as effectually, to the same extent for all purposes, as if executed with the formalities required in the case of a crop mortgage. We are unable to coincide in this view.

In the first place, we think it quite manifest from the provisions of the code in question that the legislature intended thereby to provide an exclusive mode for the mortgaging of growing crops, and intended to declare that for such purpose this species of property shall be regarded as chattels. There is nothing in the statute to indicate that it was not intended to cover every case of a mortgage given upon that class of property. In the second place, while it is perfectly true that growing crops may be either personal or real property, according to circumstances, and while, as suggested by respondent, a mortgage of the land gives a lien upon everything that would pass by a grant of the land, which includes crops growing thereon, it is, nevertheless, well established that such lien, so far as the growing crops are concerned, is limited in its effect to the crops growing upon and unsevered from the land at the time of foreclosure. It does not vest the mortgagee with a right to the crops grown intermediate the giving of the mortgage and the foreclosure thereof. Until the latter event, where, as in this state, the mortgage creates no estate in the mortgagee, but confers only a lien upon

the property, the mortgagor is entitled to such crops, with the same absolute right and dominion over them as if the mortgage did not exist. This doctrine is thoroughly well settled, with no considerable diversity upon the subject among text-writers or the courts.

The general rule is well stated in Mr. Jones' work on Mortgages, fifth edition, section 670, where it is said: " So long as the mortgagor is allowed to remain in possession he is entitled to receive and apply to his own use the income and profits of the mortgaged estate. His contract is to pay interest and not rent. Although the mortgagee may have the right to take possession upon a breach of the condition, if he does not exercise this right he cannot claim the profits. Upon a bill in equity to obtain foreclosure and sale, he may, in proper cases, apply for the appointment of a receiver to take for his benefit the earnings of the property. He is then confined to the rents and profits accruing during the pendency of the suit. If he neglects to apply for a receiver, the final decree, if silent upon this subject, does not affect the mortgagor's possession or right to the earnings in the mean time. It is only after sale under the decree, except where statutes provide otherwise, that the mortgagor is wholly divested of title, and consequently of right to possession. Unless restrained by the terms of the mortgage, the mortgagor in possession may work mines or quarries upon the mortgaged prop. erty, and whatever he severs from the realty becomes unencumbered personalty, and his own property. *Even if the rents and profits of the mortgaged property are expressly pledged* for the security of the mortgage debt, with the right in the mortgagee to take possession upon default, the mortgagee is not entitled to the rents and profits until he takes actual possession, or until possession is taken in his behalf by a receiver."

In *Teal* v. *Walker*, 111 U. S. 242, the authorities upon this subject are exhaustively reviewed, and it is there held (quoting from the *syllabus*): "A conveyance to a trustee absolute on its face, but with an instrument of

defeasance showing that it is to secure payment of a debt due to a third party, is a mortgage, and is subject to the rule that a mortgagee is not entitled to the rents and profits until he acquires actual possession. The rule that the mortgagee is not entitled to the rents and profits before actual possession applies even when the mortgagor covenants in the mortgage to surrender the mortgaged property on default in payment of the debt, and nevertheless refuses to deliver it after default, and drives the trustee to his action to enforce the trust." In that case the court, stating the doctrine as laid down in *Gilman* v. *Illinois etc. Tel. Co.*, 91 U. S. 603, say: "It was declared by this court that where a railroad company executed a mortgage to trustees on its property and franchise, 'together with the tolls, rents, and profits to be had, gained or levied thereupon,' to secure the payment of bonds issued by it, the trustees in behalf of the creditors were not entitled to the tolls and profits of the road, even after condition broken and the filing of a bill to foreclose the mortgage, they not having taken possession or had a receiver appointed."

Chancellor Kent states the rule thus: "The mortgagor has a right to lease, sell, and in every respect to deal with the mortgaged premises as owner, so long as he is permitted to remain in possession, and so long as it is understood and held that every person taking under him takes subject to all the rights of the mortgagee, unimpaired and unaffected. Nor is he liable for rents, and the mortgagee must recover possession by regular entry by suit, before he can treat the mortgagor, or the person holding under him, as a trespasser." (4 Kent's Commentaries, 157.)

In the case of *Sexton* v. *Breese*, 135 N. Y. 387, where the mortgagor of the land, subsequent to the giving of the mortgage, but before it was due, sold a growing crop of wheat raised on the land, and subsequently to such sale delivered possession of the land to the mortgagee thereof, it was held that the vendee of the crop was entitled to the same as against the mortgagee, and

it is said: "If we assume that the plaintiff was in possession of the land as by an actual surrender from the mortgagor, his rights in its use were subject to the previous disposition made of the growing crop of grain by the owner of the land. He had planted the crop, and it was perfectly competent for him to dispose of it while he held the title to the land. Though in a sense a growing crop of grain is a part of the real estate, it nevertheless possesses the characteristics of a chattel, and is salable and transferable as other personal property is, and may be taken upon execution and sold in discharge of a judgment debt."

In *West* v. *Conant*, 100 Cal. 231, where the mortgagor remained in possession of the mortgaged land after the foreclosure sale, and received all the rents, issues, and profits therefrom, it was held that he was entitled to hold such premises until the expiration of the period of redemption, and that the purchaser at the sale was not entitled to a receiver to take possession of crops of hay and grain growing upon the land, intermediate the sale and the expiration of the equity of redemption.

In the recent case of *Freeman* v. *Campbell*, 109 Cal. 360, decided by this court, where the conveyance from Anderson, plaintiff's intestate, to defendant was held to be a mortgage, and where defendant had taken possession of the land and received the rents thereof, it was held that the administrator of Anderson, the mortgagor, was entitled to recover the amount of the rents received by Campbell as money had and received belonging to the estate, and it is there said: "The claim that the mortgage included the rents as well as the land, does not aid the appellant, as under section 2927 of the Civil Code, he had no right to the possession of the mortgaged security. His right to the rents was no greater than that to the land. A mortgage is a contract by which specific property is hypothecated (Civ. Code, sec. 2920), but such contract is independent of the fact of possession, and does not of itself confer the right of possession. If a receiver had been appointed to take

possession of the mortgaged premises, the authority of that officer would have included the right to take possession of the rents as well as the land, and the rents would then have been in the custody of the court, and subject to its direction; but, in the absence of some intervention by the court, the mortgagor has the right to these rents, *even though they are included in the instrument of mortgage,* and the mortgagee's right to them is limited to their disposition by the court in the judgment, or subsequent thereto."

From the principles here declared it follows that, the mortgagor being in possession of the land, and entitled as of right to the crops grown thereon, it was competent for him to sell or mortgage, or otherwise dispose of them, and convey good title thereto, as against the mortgagee of the land or his assigns, at any time prior to the foreclosure of the latter's mortgage.

It is claimed by respondent that the cases of *Montgomery* v. *Merrill,* 65 Cal. 432, and *Treat* v. *Dorman,* 100 Cal. 623, are in conflict with the doctrine that growing crops can only be mortgaged with the formalities prescribed for the execution of chattel mortgages. But we do not so regard them. In *Montgomery* v. *Merrill,* no question, as between a mortgagee or vendee of the crop and the mortgagee of the land, arose. In the foreclosure proceedings a receiver was appointed, who took possession of the mortgaged premises and the growing crops thereon. Upon a sale of the land it brought less than the amount of the mortgage, and it was held that the mortgage was a lien upon the crop then growing upon the premises, and that the proceeds of its sale should be applied to the payment of the deficiency. There is nothing in this inconsistent with what has been said above. The rights of the mortgagor and mortgagee of the land alone were involved. The crop, being in the hands of the receiver, and not having been prior thereto sold or disposed of by the owner of the land, the case falls strictly within the limitation of the rule as above stated.

In *Treat* v. *Dorman*, the mortgagee of the crop was made a defendant in an action to foreclose a prior mortgage on the land. In its answer it made no claim of priority over the mortgage on the land, but prayed in terms that if any surplus remained from a sale of the crop "after payment of any deficiency due the plaintiff" (the mortgagee of the land), that such surplus be applied in satisfaction of its chattel mortgage—thus conceding the priority of the real estate mortgage. The decree gave appellant everything it asked, and the disposition of the case in this court would seem to have been largely influenced by that consideration, the court remarking: "It is not often that a party appeals from a judgment granting him all that he asks, and yet in this case just that thing has happened." The party's subsequent claim on the appeal to a priority of lien on the crop, and to a right to a different judgment, does not appear to have received very favorable or careful consideration, but apparently the case went off largely upon the theory that appellant had received all it asked in the court below. In what is said as to the respective rights of the two mortgagees, the court does not seem to have had in mind the provisions of the Civil Code here invoked, since no mention is made of them; and while there are some expressions by the learned commissioner looking in favor of the contention now advanced by respondent, we do not regard them, in view of the record upon which the court was passing, as essential to the conclusion reached or as binding authority.

For these reasons, and what is said in the opinion of the Department, we think the judgment should be reversed, and the court below directed to modify it in accordance with the motion of appellant.

It is so ordered.

GAROUTTE, J., McFARLAND, J., HARRISON, J., TEMPLE, J., and HENSHAW, J., concurred.

The following is the opinion above referred to, rendered in Department One on the 15th of April, 1895.

THE COURT.—The defendant, Shaw, executed to the plaintiff three promissory notes, bearing date October 1, 1891, and, as security for their payment, a mortgage upon certain lands in Riverside. The mortgaged premises are described in the complaint as lots numbered 231 and 232 of the lands of the Southern California Colony Association, but the copy of the mortgage annexed to the complaint has, in addition to the above description, the following clause: "Together, with all and singular, the tenements, hereditaments, and appurtenances thereunto belonging, and the rents, issues, and profits thereof." The defendant, Ferguson, is the holder of a second mortgage upon the same property, executed by Shaw, and is also the holder of a chattel mortgage executed to him by Shaw, June 17, 1893, upon the crop of oranges then growing, or to be produced during the season of 1893 and 1894, upon the trees upon said lots 231 and 232. The present action was brought July 19, 1893, by the plaintiff, to foreclose the mortgage to him. Judgment was rendered against the defendant Shaw, in favor of the plaintiff and of the defendant Ferguson, for the amounts claimed by each respectively, and directing that the "mortgaged premises mentioned in the plaintiff's complaint, hereinafter described," be sold, and the proceeds applied in paying to the plaintiff the amount found due to him, and that out of any surplus that might then remain, the defendant, Ferguson, should be paid the amount found due to him. The property directed in the judgment to be sold is described as the aforesaid lots numbered 231 and 232, of the Southern California Colony Association, "together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging, and the rents, issues, and profits thereof." Ferguson moved the court to amend the judgment, by providing that the growing crop of oranges be sold separately, and their proceeds applied upon the judgment in his favor. This motion was denied, and Ferguson has appealed directly from the judgment. The respondent has not filed any brief in

support of the judgment, nor did he appear at the argument of the cause, but the cause has been submitted upon the brief filed on behalf of the appellant, and upon an oral argument in his behalf.

Without determining whether, as between the plaintiff and Shaw, the mortgage in 1891 of the land, together with the "rents, issues, and profits thereof," would create a lien in favor of the plaintiff upon all the crops of oranges that might thereafter grow upon the land during the life of the mortgage (see *Montgomery* v. *Merrill,* 65 Cal. 432; *Treat* v. *Dorman,* 100 Cal. 623), it is sufficient, for the purposes of this case, to say, that, as against a subsequent mortgagee in good faith, a mortgage upon a growing crop must be executed with the formalities prescribed in the Civil Code, otherwise it is void as against him. As the mortgage to the plaintiff was not thus executed, the lien of Ferguson upon the crop of oranges was superior to the claim of the plaintiff, and the court should have directed that they be sold separately, and the proceeds applied upon the amount of the judgment in his favor.

The judgment is reversed, and the court below is directed to modify the same, by directing a sale of the mortgaged property in accordance with this opinion.